```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF CALIFORNIA
 2                             --oOo--

 3
     SANDRA NELSON,                  ) Docket No. 15-CV-02006-CKD
 4                                   )
                                     ) Sacramento, California
 5              Plaintiff,           ) July 20, 2016
                                     ) 1:14 a.m.
 6         v.                        )
                                     )
 7   JENNIFER and EARL McFALL,       ) Re: Motion for summary judgment
                                     )
 8              Defendants.          )

 9
                         TRANSCRIPT OF PROCEEDINGS
10              BEFORE THE HONORABLE CAROLYN K. DELANEY
                    UNITED STATES MAGISTRATE JUDGE
11
     APPEARANCES:
12
     For the Plaintiff:        MINNICK HAYNER by
13                             MR. DAVID M. ROSE
                               249 West Alder Street
14                             P.O. Box 1757
                               Walla Walla, WA 99362
15
     For the Defendants:       LAW OFFICE OF ARMANDO S. MENDEZ by
16                             MR. ARMANDO SILVESTRE MENDEZ
                               1231 8th Street, Suite 600
17                             Modesto, CA 95354

18   Court Recorder:           JONATHAN ANDERSON
                               U.S. District Court
19                             501 I Street, Suite 8-100
                               Sacramento, CA 95814
20                             (916)930-4072

21
     Transcribed by:           JENNIFER COULTHARD, RMR, CRR
22                             Official Court Reporter
                               501 I Street, Suite 14-243
23                             Sacramento, CA 95814
                               (312)617-9858
24                             Jenrmrcrr2@gmail.com

25   Proceedings recorded by electronic sound recording; transcript
     produced by official court reporter.
```

1          SACRAMENTO, CALIFORNIA, WEDNESDAY, JULY 20, 2016

2                              --o0o--

3          (The following proceedings were had in open court.)

4          THE CLERK:  Calling civil case 15-2006 *Nelson v.*

5   *McFall* on for motion for summary judgment.

6          THE COURT:  All right.  Good morning.  Who do we have

7   here?

8          MR. MENDEZ:  Afternoon.

9          THE COURT:  Good afternoon.

10         MR. MENDEZ:  Armando Mendez on behalf of defendants

11  Jennifer and Earl McFall.

12         THE COURT:  All right.  Good afternoon.

13         MR. ROSE:  Good afternoon.  David Rose for plaintiff,

14  Sandra Nelson.

15         THE COURT:  All right. Thank you.  All right.  Sorry

16  we're starting a little bit late.  That's what happens when we

17  specially set things.  Everything gets wonky.

18         All right.  We're here on plaintiff's motion for

19  summary judgment, and I want to turn to you, Mr. Mendez.  I'm a

20  little unclear on what your argument is based on the contract

21  as I read it.  As I read the contract, it was a promissory note

22  in the amount of $150,000 originally loaned to defendants in

23  May 2005 with a maturity date five years later, with the

24  agreement that the note could be extended for five years, which

25  it was.  And in lieu of paying simple interest at 4 percent per

1  annum that would be $500 a month, the defendants have the
2  option of waiving the training fees for two of the plaintiff's
3  horses, and plaintiff alleges that defendants failed to timely
4  repay the note.  So walk me through what your argument is.
5          MR. MENDEZ:  Your Honor, the argument is that the
6  note, when my clients first entered into it and they explained
7  it in their declarations fully is that their intention was to
8  exchange services instead of having to pay cash.  So they had
9  two options under the note.  One was to pay interest at 4
10 percent, which would be $500 a month or, alternatively, to
11 waive two horse training credits, which was much more, which
12 was -- each credit was about 975 --
13         THE COURT:  Where does it say that in the contract?
14         MR. MENDEZ:  It doesn't.  It doesn't say that in the
15 contract.  And I think what the problem is, is that it says,
16 "In lieu of" --
17         THE COURT:  Right.
18         MR. MENDEZ:  -- which that's kind of the crux of the
19 interpretation.  "In lieu of" can also mean "or, and; instead
20 of doing this, we will do this."  And that's what my clients
21 initially did.  They interpreted -- they -- when they entered
22 into this contract, their intention was to either pay $500 a
23 month in interest at 4 percent or, alternatively, to waive two
24 horse training credits, which equaled about $1,800.  That made
25 financial sense to them because they would be paying the

1  interest plus any extra amount would be reduced.  The principal
2  would be reduced by that amount.  Civil code 1642, which guides
3  the Court in interpreting that, says that when two contracts
4  are read together or are entered together and they relate to
5  the same matters between the same parties and made as part of
6  substantially the same transaction, they are both to be taken
7  together.
8      Ms. McFall's declaration sets out, and there's no
9  dispute as to this, that every time that a horse was taken to
10 the McFalls for boarding and training that there would be a
11 separate contract that would be written with a specific dollar
12 amount that that value of that contract would be worth.
13     So this practice was done at the beginning and at the
14 time that this promissory note was signed by the parties.  All
15 parties understood what the value of a training fee credit was.
16 It wasn't $500, it was $975.
17     And so when you take a look at what the parties were
18 doing in whole, which under California statutory interpretation
19 law allows the Court to look at all the contracts that were
20 signed at substantially the same time and that were part of the
21 same transaction --
22     THE COURT:  I'm sorry.  Was there more than one
23 contract that was signed?
24     MR. MENDEZ:  There was.  There was -- the declaration
25 of Jennifer McFall sets out the process by which a horse is

1 accepted into the ranch, and then notice is given to the party
2 that's placing the horse that the contract will be X amount of
3 dollars.  And in this case it ranged, but it was approximately
4 $975 per horse.
5     THE COURT:  So you think I should read that contract
6 about the horses in conjunction with their promissory notes?
7     MR. MENDEZ:  I do.  And I believe that civil code 1642
8 allows the Court to do that.
9     THE COURT:  Okay.
10    MR. MENDEZ:  And that plays into the interpretation
11 that my clients put forth that they had two options under the
12 contract.  They were either going to pay 4 percent interest,
13 $500 a month or, alternatively, do all the work necessary and
14 give -- and take a credit for the training fees that were being
15 done every month.  There was a known number to those training
16 fees.
17    The confusion is the wording that was used in the
18 contract, which is ambiguous.  It says in lieu of simple
19 interest they can waive credits.  And I think that also means
20 "or."  We could either pay 500 a month at 4 percent, or we can
21 waive a training credit.  Everybody knew what the training
22 credit was worth.
23    THE COURT:  Well, but that's not what the contract
24 said.  It said it was -- $500 was 4 percent interest.
25    MR. MENDEZ:  It does say that, but it also does say

1    training credits.  And I think the training credits need to be
2    interpreted and -- the course of conduct of the parties needs
3    to be interpreted through 1642.  We know the value of it.  It
4    wasn't a secret.  Everybody understood what a training credit
5    was and what it was worth.  My clients would be coming out of
6    pocket month in and month out if they give a training credit.
7         THE COURT:  Well, except -- I mean, didn't Mr. Chang
8    send an email acknowledging in June 2009 that the amount due on
9    the note was still $150,000?  I mean, if your interpretation is
10   right, then why wouldn't Mr. Chang have said, okay, so we
11   were --
12        MR. MENDEZ:  Yeah.
13        THE COURT:  -- we were -- we should be credited with
14   $975, which would have been more than the 4 percent, which
15   would have knocked down the balance due.
16        MR. MENDEZ:  Mr. Chang declares that he made those
17   statements to settle after a dispute arose between Ms. Nelson
18   and Mr. -- and the McFalls.  He is a father.  He is a -- he's
19   not -- we dispute that he's an agent of Dragonfire Farm.  The
20   McFalls declare that he had no authority to make decisions for
21   them; although, they were aware that he was talking to Ms.
22   Nelson.  The emails that went back and forth, I believe, are
23   inadmissible pursuant to 408, your Honor.
24        THE COURT:  I know, and I don't agree with you because
25   I think that the issue isn't about whether or not he was trying

1     to change the terms and whether or not he was a representative.
2     It's evidence that the contract terms were understood as late
3     as 2009 to mean 4 percent interest or a waiver of $500 worth of
4     fees.
5              MR. MENDEZ:  Right.  And we have raised a factual
6     dispute that that will -- that's not what it meant.  Mr. Chang
7     has filed a declaration that said that's not what it meant.
8     What I wanted to do is try to settle this matter because we
9     were having disputes over it already.
10             However he worded it, however he put it, the
11    declarations of Earl, Jennifer and Mr. Chang raised disputes
12    with regard to the meaning of those words and, you know, that's
13    the purpose of why we're here.  We're trying to find the
14    factual disputes.  It may be taken as evidence of that, but we
15    have a different version of what they mean, your Honor.
16             The course of conduct is also very important.
17    California law allows the Court to delve into what it means in
18    interpreting this contract.  What does the course of conduct of
19    the party mean when interpreting this contract?
20             Ms. Nelson treated this as income, not $500.  She
21    treated it as $62,000 worth of benefits coming to her through
22    her accountant on her taxes.  She acknowledged the fact that
23    there was some value coming back to her with regard to training
24    fee credits.  That was words that were inserted into the
25    contract that had a meaning to her, had a meaning to the

1    McFalls.  And her practice and the evidence shows that she used
2    that figure in almost every aspect, and she did not take it as
3    a $500 credit.
4            THE COURT:  Okay.  Anything else you want to tell me
5    before I turn to plaintiffs?
6            MR. MENDEZ:  Well, unless the Court has any questions,
7    I submit.
8            THE COURT:  No, I don't.
9            Okay, sir.  Anything you wish to highlight for me?
10           MR. ROSE:  Yeah.  Thank you.  Despite the -- one of
11   our faults as lawyers, I think a lot of times we put too much
12   paper in the file for fear of missing something.  But as I
13   think the Court has picked up on, this is a very simple case.
14   We are talking about a promissory note.  They agree it's a
15   promissory note, we agree it's a promissory note.  The
16   complaint is breach of promissory note.
17           As the Court understands, a promissory note is a
18   negotiable instrument.  In a general sense, it's a fixed
19   definitive promise to pay and that there are no extrinsic
20   defenses to its payment.
21           Sandra Nelson, a year or so after the promissory note
22   was executed, could have negotiated the promissory note to a
23   third-party.  They wouldn't be subject to any of the excuses
24   for nonpayment that we're hearing in this case because they
25   would take the note according to its terms, and the terms are

1  to be ascertained within the four corners of the document.  And
2  in the four corners of the document, there's a fixed promise to
3  pay that at the end of the term, either May 1st, 2010 or, if
4  it's extended, May 1st, 2015, the defendants promised to pay a
5  lump sum amount of $150,000.
6         Now, the party -- I mean, the part of the promissory
7  note that we have been focused on, unnecessarily in my opinion,
8  is how interest is going to be paid on the note.  And that
9  option was given to the defendants.  They had -- they --
10 interest payments, and that's referenced in the invoice, it's
11 all interest payments, could be $500 a month cash, or the
12 interest payment could be a waiver of two training fees.  That
13 could constitute interest.
14        "In lieu of" means -- the language means in place of,
15 instead of, as we pointed out.  So they said -- they made the
16 election:  Instead of putting cash out of pocket $500 a month,
17 we'll waive two of the training fees.  They elected to do that.
18        Then, as the Court noted, in 2009 they -- there was
19 some economic problems, and they said that this no longer is
20 working for us.  Mr. Chang, who was the agent of Dragonfire and
21 the McFalls, I don't think there's any doubt about that, you
22 can't argue that Mr. Chang sending all of these emails and
23 negotiating with Sandra Nelson regarding their business
24 relationship didn't have apparent or ostensible authority to
25 represent the defendants.  I mean, that is as clearcut as can

1   be.

2         And he admitted in the -- in the email that we pointed

3   out in Exhibit 6 that we no longer choose the option to get

4   your monthly two training credits in lieu of interest of $500.

5   We will instead pay you 500 of stated interest and start

6   reserving monthly to make the ultimate one-lump-sum payment.

7         Mr. Chang understood the promissory note and how it

8   was to be repaid.  He drafted it, and he was involved in all

9   the negotiations.  And it's clear they could have decided to

10  start paying the 500.  And so this is a case -- as I pointed

11  out, promissory note cases are uniquely appropriate for summary

12  judgment because the -- but the Court is --

13        THE COURT:  I understand, sir.

14        MR. ROSE:  Okay.

15        THE COURT:  I understand. I understand. Any final

16  word, sir?

17        MR. MENDEZ:  Your Honor, just -- counsel used the

18  words "In lieu of", "instead of."  I used "or."  I think

19  they're all interchangeable.  And that's the issue with this

20  promissory note, that it's ambiguous.

21        The Court has guidance through the California

22  statutory scheme to take a look at the rules and look beyond

23  the four corners of the agreement to see what happened between

24  these parties.  What is the intention.

25        One very important civil code section that's cited in

1 | there is that the Court needs to interpret the agreement to
2 | give it effect and legality.  I've raised a usury defense.
3 | That's one of the things that they have to overcome.  Our
4 | expert says that if we interpret the note based on all the
5 | payments that he's seeing, the amount of the horse training fee
6 | credits that were spelled out to Sandra Nelson when she signed
7 | each one of the boarding contracts, they would be paying 18
8 | percent interest.
9 |     Whether there are exceptions to that rule in this
10 | case, we don't know.  We need a trial for that.  And that's --
11 | I believe, your Honor, and I will submit that we've raised many
12 | issues of -- material issues of fact that need to be put before
13 | a trier of fact, and I respectfully ask for the motion to be
14 | denied.
15 |     THE COURT:  All right.  Thank you.  I'm going to take
16 | the motion under submission, and I'll issue a formal order.
17 | Thank you.
18 |     MR. MENDEZ:  Thank you.
19 |     MR. ROSE:  Thank you.
20 |     THE CLERK:  Court is in recess.
21 |   (Concluded at 1:30 p.m.)
22 |
23 |               C E R T I F I C A T E
24 |
25 |   I, court-approved transcriber, certify that the foregoing

1   is a correct transcript from the official electronic recording

2   of the proceedings in the above-entitled matter.

3

4

5   */s/ JENNIFER L. COULTHARD*                    June 2, 2017

6                                                      DATE

7   JENNIFER L. COULTHARD, RMR, CRR
    Official Court Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25